IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA A. GERSTEIN,<br><br>    Plaintiff,<br><br>  v.<br><br>CENTRAL INTELLIGENCE AGENCY, et al.,<br><br>    Defendants.<br>_____ / | No. C-06-4643 MMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CLAIMS BASED ON DENIAL OF EXPEDITED PROCESSING OF FOIA REQUESTS; SETTING DEADLINE FOR PRODUCTION; DENYING WITHOUT PREJUDICE REQUEST FOR <u>VAUGHN</u> INDEX; VACATING HEARING**<br><br>(Docket No. 7) |

Before the Court is plaintiff Joshua A. Gerstein's ("Gerstein") motion for summary judgment on his claims that defendants Central Intelligence Agency ("CIA") and National Security Agency ("NSA") violated the Freedom of Information Act ("FOIA") by denying expedited processing of Gerstein's FOIA requests. Defendants have filed opposition to the motion; Gerstein has filed a reply. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, see Civil L.R. 7-1(b), hereby VACATES the December 1, 2006 hearing, and rules as follows.

**BACKGROUND**

Gerstein alleges he is a professional journalist employed full-time as a reporter covering legal and political issues for the New York Sun, a daily newspaper published in

New York City.  (See Compl. ¶ 2.)

Gerstein alleges that "[f]rom mid-2005 to the present, President Bush, executive branch officials, members of Congress, and the press have participated in an escalating public debate about unauthorized disclosures, often called 'leaks,' of classified information." (See Compl. ¶ 13.)  According Gerstein, such debate "has been spurred and fueled by a series of highly-publicized news reports, including stories about alleged secret CIA prisons overseas, about the warrantless surveillance by the NSA of certain telephone calls placed or received by Americans, about an alleged decision by President Bush and Vice President Cheney to declassify an intelligence estimate on Iraq without notifying personnel normally notified in such declassification, and about the alleged tracking by government agencies of billions of long-distance telephone calls made within the United States."  (See id.)

On March 16 and 17, 2006, Gerstein sent separate, but similar, FOIA requests to the CIA, NSA, Department of Defense ("DOD"), Department of Justice ("DOJ"), Department of State ("DOS"), Federal Bureau of Investigation ("FBI"), and the National Reconnaissance Office ("NRO"), pursuant to which Gerstein sought certain records relating to unauthorized disclosures of classified information, and asked that the processing of each such request be expedited, on the ground that a compelling need exists for disclosure of the records sought. (See Gerstein Decl. ¶¶ 1, 5, 7-10, 13-14, and 16-18 and Exs. A, E, G-J, M-N, and P-R.)  As an example, Gerstein's request to the CIA seeks the following records:

> 1. All so-called criminal referrals submitted by CIA to the Department of Justice ("DOJ") since January 1, 2001 regarding unauthorized disclosure of classified information to the press or public.
>
> 2. All responses from DOJ to CIA indicating the outcome of the investigations, inquiries, or legal analyses related to the incidents referenced in No. 1 above.
>
> 3. All records reflecting the outcome of disciplinary proceedings instituted in connection with the incidents referenced in No. 1 above.
>
> 4. All records reflecting the outcome of damage assessments conducted in connection with the incidents referenced in No. 1 above.
>
> 5. All logs, lists, tallies, tabulations, summary reports, compilations, and the like pertaining to the referrals described in No. 1 above, whether or not composed solely of those referrals.

> 6. All records pertaining to published reports in or about August 1998 that the United States was aware of or tracking a satellite telephone used by Osama Bin Laden, the source or sources of that alleged leak, all referrals by DOJ in connection with that alleged leak, all replies from DOJ thereto, and any damage assessment conducted in connection with that alleged leak.

(See id. Ex. A at 1-2.)

The DOD, DOJ, FBI, and DOS granted Gerstein's request for expedited processing. (See id. Exs. F, L, O.) The CIA and NSA denied Gerstein's request for expedited processing.[1] (See id. Exs. B, and S.) The CIA rejected Gerstein's administrative appeal of said denial on the ground that no appeal of a denial of expedited processing was permitted. (See id. Ex. D.) The NSA considered Gerstein's administrative appeal and affirmed its initial determination that expedited processing was not warranted. (See id. Ex. U.) As of the date of the complaint, Gerstein alleges, he has received no records from any of the defendants in response to his FOIA requests. (See id. ¶¶ 15, 16, 20, 21, 22, 23.)

Gerstein filed the instant action on July 31, 2006. Gerstein alleges, inter alia, that (1) the CIA, DOD, DOJ, DOS, FBI, and NSA have violated FOIA by failing to disclose the requested records, or to justify their withholding, within 20 business days of the receipt of the requests; (2) the NRO has violated FOIA by failing to act on plaintiff's administrative appeal within 20 business days of receipt; and (3) the CIA and NSA have violated FOIA by failing to grant Gerstein's request for expedited processing. (See id. ¶¶ 27-29.)

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[1] According to Gerstein, the NRO rejected his request for expedited processing, but shortly thereafter advised him that it had located 31 pages of records responsive to his request and was withholding all records in their entirety pursuant to FOIA exemptions. (See Compl. ¶ 22.) Gerstein alleges he has filed an administrative appeal of the NRO's withholding of responsive records, but, as of the date of the complaint, has received no response to the appeal. (See id.)

judgment as a matter of law." See Fed. R. Civ. P. 56(b), (c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if the record contains admissible evidence on which a reasonable jury could return a verdict for the nonmoving party. See id. The Court may not weigh the evidence. See id. at 255. Rather, the nonmoving party's evidence must be believed and "all justifiable inferences must be drawn in [the nonmovant's] favor." See United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing Liberty Lobby, 477 U.S. at 255).

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party's burden is discharged when it shows the court there is an absence of evidence to support the nonmoving party's case. See id. at 325.

Where the moving party "bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial." See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (citations omitted); see also Fontenot v. Upjohn, 780 F.2d 1190, 1194 (5th Cir. 1986) (holding when plaintiff moves for summary judgment on issue upon which he bears burden of proof, "he must establish beyond peradventure all of the essential elements of the claim . . . to warrant judgment in his favor.") (emphasis in original).

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e); see also Liberty Lobby, 477 U.S. at 250. The opposing party need not show the issue will be resolved conclusively in its favor. See Liberty Lobby, 477 U.S. at 248-49. All that is necessary is submission of sufficient evidence to create a material factual dispute, thereby

4

1    requiring a jury or judge to resolve the parties' differing versions at trial.  See id.

## DISCUSSION

As noted, Gerstein moves for summary judgment on his claims that the CIA and NSA violated FOIA by failing to grant expedited processing of Gerstein's FOIA requests.

### A. Expedited Processing – Legal Standard

Except in "unusual" or "exceptional" circumstances, an agency receiving a FOIA request must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request[.]" See 5 U.S.C. § 552(a)(6)(A), (B), (C).  FOIA additionally requires all agencies to "promulgate regulations . . . providing for expedited processing of requests for records . . . in cases in which the person requesting the records demonstrates a compelling need . . . and . . . in other cases determined by the agency."  See 5 U.S.C. § 552(a)(6)(E).

Under FOIA, "the term 'compelling need' means – (I) that a failure to obtain records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity."  See 5 U.S.C. § 552(a)(6)(E)(v).  "A demonstration of a compelling need by a person making a request for expedited processing shall be made by a statement certified by such person to be true and correct to the best of such person's knowledge and belief."  See 5 U.S.C. § 552(a)(6)(E)(vi).[2]

The CIA's regulations on expedited processing set forth no substantive standard beyond that required by FOIA.  See 32 C.F.R. § 1900.34(c) ("Requests for expedited processing will be approved only when a compelling need is established to the satisfaction of the Agency.").

The NSA's regulations on expedited processing provide that expedited processing will be granted upon a showing of compelling need, "imminent loss of substantial due

---

[2] Gerstein's FOIA requests to the CIA and NSA are certified.  (See Gerstein Decl. Ex. A at 6; Ex. R at 6.)

5

process rights," and "humanitarian need." See 32 C.F.R. § 299.5(f). "Compelling need" exists, inter alia, when "[t]he information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public about actual or alleged Federal government activity." See 32 C.F.R. § 299.5(f)(2). "Urgently needed means that the information has a particular value that will be lost if not disseminated quickly." See id. Additionally, the NSA is subject to the DOD's FOIA regulations. See 32 C.F.R. § 285.2(b). The DOD's regulations on expedited processing are consistent with the NSA's regulations on expedited processing, but additionally provide that "[r]epresentatives of the news media . . . would normally qualify as individuals primarily engaged in disseminating information," and that ordinarily the term "urgently needed" "means a breaking news story of general public interest." See 32 C.F.R. § 286.4(d)(3)(ii). "However, information of historical interest only, or information sought for litigation or commercial activities would not qualify, nor would a news media publication or broadcast deadline unrelated to the news breaking nature of the information." See 32 C.F.R. § 286.4(d)(3)(ii)(A).

"Agency action to deny or affirm denial of a request for expedited processing . . . shall be subject to judicial review . . . based on the record before the agency at the time of the determination." See 5 U.S.C. § 552(a)(6)(E)(iii). "[D]istrict courts must review such denials de novo, rather than defer to agency determination." Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 301 (D.C. Cir. 2001).

**B. Discussion**

Gerstein argues he is entitled to expedited processing of his FOIA requests on the ground there is a compelling need for the information sought because he is "a person primarily engaged in disseminating information" and there is "urgency to inform the public concerning actual or alleged Federal Government activity." See 5 U.S.C. § 552(a)(6)(E)(v). Defendants do not take issue with Gerstein's assertion that, as a reporter for the New York Sun, he qualifies as a "person primarily engaged in disseminating information." Rather, defendants argue that Gerstein has not shown that his requests involve a matter of urgency.

6

In connection with his requests for expedited processing, Gerstein pointed to, and attached copies of, then-recent statements by President Bush, Vice President Cheney, and Director of Central Intelligence Porter Goss ("Goss"), wherein each of said individuals complained about leaks of classified information. (See Gerstein Decl. ¶ 22, Ex. A at 2-4, Ex. R at 2-4, Ex. V.) In particular, Gerstein noted, President Bush, in a December 19, 2005 press conference, complained about disclosure of a program for warrantless surveillance as well as a disclosure relating to Osama Bin Laden's telephone. (See id. Ex. A at 2; Ex. R at 2; Ex. V at 1.) Further, as noted by Gerstein, Vice President Cheney, in a February 15, 2006 interview with Fox News, stated that recent leaks of classified data had harmed the United States' relationships with other governments, (see id. Ex. A at 3; Ex. R at 3; Ex. V at 13), and Goss, in various statements to the press in January and February 2006, expressed concerns about the damage caused by leaks and the need to contain them, stating he had referred dozens of leak infractions for investigation by a special CIA unit. (See id. Ex. A at 3-4; Ex. R at 3-4; Ex. V at 14-19.) Moreover, as Gerstein pointed out, Goss, at a hearing before the Senate Intelligence Committee in February 2006, described the impact of leaks as "very severe" and stated that the CIA developed "a strong internal program" to combat the leaks. (See id. Ex. A at 4; Ex. R at 4; Ex. V at 20-21.)

Gerstein further pointed out that, in reports published in November 2005 and February 2006, which reports Gerstein attached to his requests, members of Congress had complained about leaks of classified information and that at least one Congressman stated, in February 2006, that he was considering introducing legislation to address the issue. (See id. Ex. A at 4; Ex. R at 4; Ex. V at 22-29.) Finally, Gerstein represented that a search of the Nexis database conducted on March 11, 2006 identified 977 news reports in the previous 90 days that included the terms "classified" and "leaks." (See id. Ex. A at 4; Ex. R at 4.)

Gerstein argued that such public statements and news reports "establish that widespread and exceptional media interest exists in the subject of [his] request," that "the recent comments of President Bush and other senior officials establish beyond any dispute

1  that the issues involved are of acute and significant national interest," and that "[t]he
2  potential for legislative action further underscores the urgency of [his] request." (See id.
3  Ex. A at 5; Ex. R at 5.)
4      In Gerstein's administrative appeals to the CIA and NSA, he further pointed out that
5  Goss had published an op-ed piece in the New York Times on February 10, 2006, in which
6  Goss stated that America was "at risk of losing a key battle: the battle to protect our
7  classified information," and that the CIA and the DOJ were working "aggressively" to
8  investigate unauthorized disclosures of confidential information. (See id. Ex. C at 2; Ex. T
9  at 2; and Ex. W at 1-2.) Additionally, Gerstein noted that on February 17, 2006, Senator
10 John Rockefeller sent a letter to John Negroponte, Director of National Intelligence,
11 expressing concerns about unauthorized disclosures of classified material, as well as
12 asserted disclosures of classified information for political purposes by persons in the Bush
13 administration. (See id. Ex. C at 2; Ex. T at 2; and Ex. W at 3-6.) Gerstein also referenced,
14 but did not attach copies of, April and May 2006 news articles about "the reported firing of a
15 veteran CIA officer for alleged leaks to the press" and the reported tracing of telephone
16 calls by journalists as part of an effort to locate leakers of classified information. (See id.
17 Ex. C at 2-3; Ex. T at 2-3.) Finally, Gerstein pointed out that President Bush, in a May 11,
18 2006 statement to the press, remarked, with respect to an alleged NSA program to collect
19 information on domestic telephone calls, that "every time sensitive intelligence is leaked, it
20 hurts [the government's] ability to defeat th[e] enemy." (See id. Ex. C at 3; Ex. T at 3.)
21 Gerstein expressed his hope that "[w]ith Mr. Bush complaining regularly about illegal leaks
22 and Mr. Goss penning op-ed pieces on his efforts to combat the problem," the CIA and
23 NSA "surely . . . will not persist in [the] argument, in essence, that [Bush and Goss] are
24 ruminating on matters of no significance." (See id. Ex. C at 3; Ex. T at 3.)
25     As discussed above, Gerstein, to obtain expedited processing, must demonstrate a
26 "compelling need" for the information sought, which requires a showing of "urgency to
27 inform the public concerning actual or alleged Federal Government activity." See 5 U.S.C.
28 § 552(a)(6)(E)(v). Although FOIA does not define "urgency," the D.C. Circuit, the only

appellate court to have addressed the issue, has observed that the relevant legislative history provides the following guidance in interpreting the term: "'The standard of 'urgency to inform' requires that the information should pertain to a matter of a current exigency to the American public and that a reasonable person might conclude that the consequences of delaying a response to a FOIA request would compromise a significant recognized interest.'" See Al-Fayed, 254 F.3d at 310 (quoting H.R. Rep. No. 104-795 at 26 (1996)). The D.C. Circuit thus concluded: "[I]n determining whether requestors have demonstrated 'urgency to inform,' and hence 'compelling need,' courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." See id.

In the instant case, with respect to the first factor, there is no dispute that the subject of Gerstein's requests, the unauthorized leaking of classified information, was a subject of great public interest at the time he submitted his FOIA requests. Rather, defendants argue, relying on Al-Fayed, that "because the issue has been the subject of 'ongoing' and 'sustained' interest . . . it cannot also be 'urgent' and 'exigent.'" (See Opp. at 7:24-26.) In Al-Fayed, the D.C. Circuit held that a request for expedited processing of a FOIA request for documents relating to the death of Princess Diana was properly denied, on grounds of lack of exigency, because "[a]ll of the events and alleged events occurred two to three years before [the] plaintiffs made their requests for expedited processing," and although the topic might "continue to be newsworthy, none of the events at issue [was] the subject of a currently unfolding story." See id. at 310. Here, by contrast, Gerstein seeks documents concerning the government's ongoing efforts to address leaks of classified information, an issue that is not only newsworthy, but was the subject of an ongoing national debate at the time he made his FOIA requests. The Court finds Gerstein has demonstrated that the subject of his FOIA requests concerned a matter of then-current exigency to the American public. See, e.g., American Civil Liberties Union of Northern California v. U.S. Department

9

of Defense, 2006 WL 1469418 at *7 (N.D. Cal. 2006) (holding "extensive media interest usually is a fact <u>supporting</u> not <u>negating</u> urgency in the processing of FOIA request"; rejecting argument that publication of "a great deal of information" relevant to FOIA requests eliminated urgency of such requests).

With respect to the second factor, defendants argue that Gerstein has failed to establish that "the consequences of delaying a response would compromise a significant recognized interest." <u>See</u> <u>Al-Fayed</u>, 254 F.3d at 310 (internal quotation and citation omitted). Although, as defendants point out, Gerstein's requests for expedited processing contain no express contention that delay in processing his requests would compromise "a significant recognized interest," Gerstein nonetheless adequately described such an interest. In particular, Gerstein expressly noted that "members of Congress have . . . decried leaks of classified information and are considering legislation to address the issue" and that leaks of classified information had been discussed in hearings before the Senate Intelligence Committee, (<u>see</u> Gerstein Decl. Ex. A at 3-4; Ex. R at 3-4); he argued that "[t]he potential for legislative action further underscores the urgency of this request," (<u>see</u> Gerstein Decl. Ex. A at 5; Ex. R at 5). The Court agrees. As Gerstein points out in the instant motion, there is a significant recognized interest in enhancing public debate on potential legislative action. <u>See</u>, e.g., <u>Leadership Conference on Civil Rights v. Gonzales</u>, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (granting expedited processing because, <u>inter</u> <u>alia</u>, "[p]laintiff's FOIA requests could have vital impact on development of the substantive record in favor of reauthorizing or making permanent the special provisions of the Voting Rights Act"); <u>American Civil Liberties Union v. United States Department of Justice</u>, 321 F. Supp. 2d 24 (D.D.C. 2004) (granting expedited processing because, <u>inter</u> <u>alia</u>, "a principle aim of plaintiff's FOIA request is to provide information for the ongoing national debate about whether Congress should renew Section 215 and other Patriot Act surveillance provisions before they expire"). A delay in processing Gerstein's FOIA requests, as he contends, "could preclude any meaningful contribution to the ongoing public debate and render any disclosure little more than a historical footnote." (<u>See</u> Motion at 8:13-16.)

Moreover, even in the absence of potential legislative action, Gerstein argues, "Congress clearly contemplated that requests pertaining to issues of intense public attention should be expedited." (See Motion at 7:25-26.)  Gerstein expressly argued in his requests for expedited processing that "exceptional media interest exists in the subject of [his] request[s]," and that the "comments of President Bush and other senior officials establish beyond any dispute that the issues involved are of acute and significant national interest." (See Gerstein Decl. Ex. A at 5; Ex. R. at 5.)  While FOIA's legislative history provides that the public's mere "right to know, although a significant and important value, would not by itself be sufficient to satisfy" the "urgency to inform" requirement, see Al-Fayed, 254 F.3d at 310 (internal quotation and citation omitted), at least one court has held that the media has a "significant recognized interest," beyond the public's mere "right to know," in "quickly disseminating breaking, general-interest news."  See American Civil Liberties Union of Northern California v. U.S. Department of Defense, 2006 WL 1469418 at *8 (granting expedited processing of FOIA request for information about DOD's use of "TALON" system for gathering information about political protests; relying on 53 recent articles in press and inquiries about system by several members of Congress).  As Gerstein correctly observes, quoting Payne Enterprises v. United States, 837 F.2d 486 (D.C. Cir. 1988), "stale information is of little value."  See id. at 494.  Indeed, with respect to expedited processing under FOIA, the regulations applicable to the NSA expressly define the term "urgently needed" to encompass "a breaking news story of general public interest." See 32 C.F.R. § 286.4(d)(3)(ii); see also American Civil Liberties Union of Northern California v. U.S. Department of Defense, 2006 WL 1469418 at *8 (relying on § 286.4(d)(3)(ii) in finding significant recognized interest in disseminating breaking news).[3]

Accordingly, the Court finds Gerstein demonstrated in his requests that the

---

[3] The Court further notes that the DOD, DOJ, FBI, and DOS granted Gerstein's request for expedited processing, based on the same showing as made to the CIA and NSA.  (See id. Exs. F, L, O.)  "'[C]ompelling need,' like other FOIA terms, sets a government-wide rather than agency-specific standard"; "[t]he meaning of FOIA should be the same no matter which agency is asked to produce its records."  See Al-Fayed, 254 F.3d at 306.

11

consequences of delaying a response thereto would compromise a significant recognized interest.

Finally, there is no argument that the third factor has not been met; Gerstein's requests unquestionably concern federal government activity.

In sum, Gerstein has demonstrated that (1) his FOIA requests concern a matter of current exigency to the American public; (2) the consequences of delaying a response would compromise a significant recognized interest; and (3) the requests concern federal government activity.  See Al-Fayed, 254 F.3d at 310.  Consequently, the Court finds Gerstein has demonstrated a compelling need for the information sought in his FOIA requests and, accordingly, will GRANT Gerstein's motion for summary judgment on his claims that the CIA and NSA violated FOIA by denying expedited processing of his FOIA requests.

FOIA does not set forth a specific deadline by which expedited processing of a FOIA request must be concluded.  Rather, the statute provides: "An agency shall process as soon as practicable any request for records to which the agency has granted expedited processing[.]"  See 5 U.S.C. § 552(a)(6)(E)(iii).  Gerstein requests that the Court order the CIA and NSA to produce "all non-exempt responsive records and portions of records within 30 days of the Court's ruling."  (See Motion at 10:15-19.)  Defendants do not respond to this request and, in particular, do not contend it is not "practicable" for them to process Gerstein's FOIA requests within 30 days.  Indeed, agencies generally are required, within 20 days of receipt of even a non-expedited FOIA request, to process the request and inform the requesting party of their determination to either comply or not comply, absent "unusual" or "exceptional" circumstances.  See 5 U.S.C. § 552(a)(6)(A), (B), (C).  With respect to production, FOIA provides that "[u]pon determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request," see 5 U.S.C. § 552(a)(6)(C)(i); the CIA and NSA have made no showing that they are unable to comply with this mandate.  Finally, Gerstein's FOIA requests have been pending for more than eight months.  Accordingly, the Court will

1  GRANT Gerstein's request that the CIA and NSA be required to process his requests and
2  produce all non-exempt responsive records within 30 days.[4]

3  Lastly, Gerstein seeks an order requiring the CIA and NSA to provide, within 60 days
4  of the date of this order, a <u>Vaughn</u> index of withheld records.  Gerstein's request for a
5  <u>Vaughn</u> index appears in one sentence in his prayer for relief and is not otherwise
6  addressed by the parties.  A <u>Vaughn</u> index, see <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir.
7  1973), "must identify each document withheld, and provide a particularized explanation of
8  how disclosure would violate an exemption" under FOIA.  See <u>Minier v. Central Intelligence</u>
9  <u>Agency</u>, 88 F.3d 796, 803 (9th Cir. 1996).  The Ninth Circuit has held, however, that
10 production of a <u>Vaughn</u> index is not necessary in all FOIA cases, see <u>id</u>. at 804, and in
11 particular, is unnecessary where an "affidavit submitted by an agency is sufficient to
12 establish that the requested documents should not be disclosed," or where "a FOIA
13 requester has sufficient information to present a full legal argument."  See <u>id</u>.  In the instant
14 case, as the CIA and NSA have not yet responded to Gerstein's FOIA requests, Gerstein
15 has not demonstrated the need for a <u>Vaughn</u> index.  Accordingly, the Court will DENY
16 Gerstein's request for a <u>Vaughn</u> index, without prejudice to Gerstein's seeking such relief at
17 a later date if he finds the CIA's and NSA's forthcoming responses to his FOIA requests
18 lack sufficient detail with respect to any asserted justification for the withholding of
19 responsive records.

20 **CONCLUSION**

21 For the reasons set forth above, Gerstein's motion for summary judgment on his
22 claim that the CIA and NSA violated FOIA by denying his request for expedited processing
23 under FOIA, is hereby GRANTED, and the CIA and NSA are hereby ORDERED to produce
24 all non-exempt records and non-exempt portions of records that are responsive to
25 Gerstein's FOIA requests within 30 days of the date of this order.  Gerstein's request for a

---

[4] The Court, by this order, does not preclude the CIA and NSA from withholding responsive documents pursuant to relevant FOIA exemptions.  The question of whether any responsive documents may properly be withheld from production is not currently before the Court.

13

1 | Vaughn index is hereby DENIED without prejudice.

2 |     This order terminates Docket No. 7.

3 | **IT IS SO ORDERED.**

4 | Dated: November 29, 2006            MAXINE M. CHESNEY
                                                United States District Judge