1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSHUA A. GERSTEIN,

       Plaintiff,

  v.

CENTRAL INTELLIGENCE AGENCY,
et al.,

      Defendants.

_____/

No. C-06-4643 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR MORE DEFINITE STATEMENT; DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR IN CAMERA REVIEW AND LIMITED DISCOVERY**

Before the Court are the following four motions: (1) Motion for Partial Summary Judgment, filed August 2, 2007 by defendants Central Intelligence Agency ("CIA"), Department of Defense ("DOD"), Department of Justice ("DOJ"), Department of State ("DOS"), Federal Bureau of Investigation ("FBI"), National Reconnaissance Office ("NRO"), and National Security Agency ("NSA"); (2) Cross-Motion for Partial Summary Judgment Against Defendant Department of Justice, filed October 1, 2007 by plaintiff Joshua A. Gerstein ("Gerstein"); (3) Motion for More Definite Statement from Defendant NSA Regarding Scope of Search, filed October 1, 2007 by Gerstein; and (4) Motion for In Camera Review and Limited Discovery, filed October 1, 2007 by Gerstein. Having considered the papers filed in support of and in opposition to the motions, the Court finds

the matters appropriate for decision without oral argument and rules as follows.

**BACKGROUND**

Gerstein alleges he is a professional journalist employed full-time as a reporter covering legal and political issues for the New York Sun, a daily newspaper published in New York City.  (See Compl. ¶ 2.)

Gerstein alleges that "[f]rom mid-2005 to the present, President Bush, executive branch officials, members of Congress, and the press have participated in an escalating public debate about unauthorized disclosures, often called 'leaks,' of classified information." (See Compl. ¶ 13.)  According to Gerstein, such debate "has been spurred and fueled by a series of highly-publicized news reports, including stories about alleged secret CIA prisons overseas, about the warrantless surveillance by the NSA of certain telephone calls placed or received by Americans, about an alleged decision by President Bush and Vice President Cheney to declassify an intelligence estimate on Iraq without notifying personnel normally notified in such declassification, and about the alleged tracking by government agencies of billions of long-distance telephone calls made within the United States."  (See id.)

On March 16 and 17, 2006, Gerstein sent separate, but similar, requests under the Freedom of Information Act ("FOIA") to the CIA, DOD, DOJ,[1] DOS, FBI, NRO, and NSA, pursuant to which Gerstein sought certain records relating to unauthorized disclosures of classified information.  (See Declaration of Joshua A. Gerstein ("Gerstein Decl.") Exs. A, E, G-J, M-N, and P-R.)  As an example, Gerstein's request to the CIA seeks the following records:

> 1.  All so-called criminal referrals submitted by CIA to the Department of Justice ("DOJ") since January 1, 2001 regarding unauthorized disclosure of classified information to the press or public.
>
> 2.  All responses from DOJ to CIA indicating the outcome of the investigations, inquiries, or legal analyses related to the incidents referenced in No. 1 above.

---

[1]  Gerstein's request for records from the DOJ was handled by three separate offices within the DOJ: the Office of Information and Privacy ("OIP"), the Office of Professional Responsibility ("OPR"), and the Criminal Division ("CRM"), each of which provided separate responses to Gerstein's request.

3.  All records reflecting the outcome of disciplinary proceedings instituted in connection with the incidents referenced in No. 1 above.

4.  All records reflecting the outcome of damage assessments conducted in connection with the incidents referenced in No. 1 above.

5.  All logs, lists, tallies, tabulations, summary reports, compilations, and the like pertaining to the referrals described in No. 1 above, whether or not composed solely of those referrals.

6.  All records pertaining to published reports in or about August 1998 that the United States was aware of or tracking a satellite telephone used by Osama Bin Laden, the source or sources of that alleged leak, all referrals by DOJ in connection with that alleged leak, all replies from DOJ thereto, and any damage assessment conducted in connection with that alleged leak.

(See id. Ex. A at 1-2.)

Gerstein filed the instant action on July 31, 2006.[2]  Gerstein alleges, inter alia, that all defendants have violated FOIA by failing to conduct the requisite records searches in response to Gerstein's requests, and by applying scope, subject matter, and/or temporal restrictions that render their searches insufficient under FOIA, (see Compl. ¶ 31); Gerstein further alleges that all defendants are violating FOIA by unlawfully withholding documents that are not exempt or otherwise excluded from disclosure under FOIA, (see id. ¶ 33).[3]

The instant cross-motions for summary judgment address two issues: the adequacy of each defendant's search for records responsive to Gerstein's requests, and the propriety of each defendant's withholding of documents pursuant to each FOIA exemption asserted.[4] Gerstein's additional motions address his asserted need for a more definite statement from the NSA regarding the scope of its search, in camera review by the Court, and leave to conduct limited discovery pertaining to defendants' public statements regarding matters

---

[2] Although Gerstein alleges that, as of the date of the complaint, he had not received any of the requested records from any defendant, (see Compl. ¶¶ 15, 16, 20, 21, 22, 23), each defendant has since responded to Gerstein's requests.

[3] The Court previously granted summary judgment in favor of Gerstein with respect to his claim that the CIA and NSA violated FOIA by failing to grant Gerstein's request for expedited processing.  (See Order filed November 29, 2006.)

[4] The applicability of various exemptions to documents contained in the case files for individual leak investigations will be addressed by future motions for summary judgment.

3

1   that defendants argue herein are exempt from disclosure.

2   **LEGAL STANDARD**

3   FOIA provides that "each [federal] agency, upon any request for records which

4   (A) reasonably describes such records and (B) is made in accordance with published rules

5   stating the time, place, fees (if any), and procedures to be followed, shall make the records

6   promptly available to any person."  See 5 U.S.C. § 552(a)(3).

7   Nine specific categories of records are exempt from disclosure.  See 5 U.S.

8   § 552(b).  The exemptions "have been consistently given a narrow compass," see United

9   States Dept. of Justice v. Tax Analysts, 492 U.S. 136, 151 (1989), and agency records that

10  "do not fall within one of the exemptions are improperly withheld," see id. (internal quotation

11  omitted).  If only a portion of a record is exempt from disclosure, the agency must disclose

12  the non-exempt portion if it is "reasonably segregable."  See 5 U.S.C. § 552(b) ("Any

13  reasonably segregable portion of a record shall be provided to any person requesting such

14  record after deletion of the portions which are exempt").

15  "FOIA expressly places the burden 'on the agency to sustain its action' and directs

16  the district courts to 'determine the matter de novo.'"  United States Dept. of Justice v.

17  Reporters Committee for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting

18  § 552(a)(4)(B)).  Under FOIA, a district court may "enjoin the agency from withholding

19  agency records and . . . order the production of any agency records improperly withheld."

20  See 5 U.S.C. § 522(a)(4)(B).  FOIA does not provide a monetary remedy.  Gale v. U.S.

21  Dept. of Justice, Federal Bureau of Prisons, 628 F.2d 224, 226 n.4 (D.C. Cir. 1980).

22  **DISCUSSION**

23  In their motion for summary judgment, defendants first seek judgment in their favor

24  on the issue of the adequacy of each of their respective searches for documents

25  responsive to Gerstein's FOIA requests.  In response, Gerstein states he does not oppose

26  summary judgment with respect to the searches conducted by eight of the nine responding

27  entities, but contests the adequacy of the search conducted by the NSA; further, as noted,

28  Gerstein has moved for a more definite statement regarding the NSA's search.  Defendants

4

1    additionally seek summary judgment on the issue of the propriety of their withholding of

2    documents, under various FOIA exemptions, by six of the nine responding entities,

3    specifically, the NRO, NSA, CIA, OIP, CRM, and OPR;[5] as to each such agency, Gerstein

4    opposes such a finding.

5         In his cross-motion for partial summary judgment, Gerstein seeks summary

6    judgment on two limited issues: the CIA's asserted waiver of one exemption, and the

7    sufficiency of the CRM's showing as to the redaction of file numbers contained in two "leak

8    tracking databases" released by the CRM.[6]  By his remaining motion, Gerstein seeks in

9    camera review of a subset of documents withheld under the "deliberative process" privilege

10   contained in Exemption 5, and requests leave to conduct discovery with respect to public

11   statements authorized by defendants, as well as official declassifications or partial

12   declassifications by defendants, related to documents withheld under Exemption 1 or

13   Exemption 3.  Defendants oppose, without qualification, each of Gerstein's motions.

14   **I. Adequacy of the NSA's Search**

15        As noted, Gerstein disputes the adequacy of the NSA's search for responsive

16   documents, and requests a more definite statement from the NSA regarding its search.[7]

17   _____

18   [5]The remaining three defendants, either, as in the case of the DOS, did not locate
     any responsive documents, or, as with the DOD and FBI, only located documents
19   pertaining to case-specific files, a matter which, as noted, is not at issue in the instant
     motions.
20        Moreover, in light of the fact that the DOS found no responsive records, and
     because the adequacy of the DOS's search is not contested, Gerstein states there is no
21   longer a case or controversy between himself and the DOS, and, accordingly, consents to
     entry of judgment in favor of the DOS.  (See Pl.'s Opp'n at 2:9-13.)

22   [6] To the extent Gerstein, in his motion for partial summary judgment, also sought
     judgment with respect to the DOJ's withholding in its entirety of a third "leak tracking
23   database" under Exemption 1, Gerstein subsequently filed a motion for leave to withdraw,
     without prejudice, that portion of his motion.  (See Pl.'s Reply and Mot. for Leave to
24   Withdraw in Part Cross-Motion for Partial Summary J. at 3:5-7.)  The motion for leave to
     withdraw is hereby GRANTED and the subject portion of Gerstein's motion for partial
25   summary judgment is deemed withdrawn.

26   [7] Gerstein brings his motion for a more definite statement under Rules (12)(e) and
     56(f) of the Federal Rules of Civil Procedure.  Rule 12(e) is inapplicable, as it concerns the
27   sufficiency of complaints and their equivalents.  See Fed. R. Civ. P. 12(e) (providing "[a]
     party may move for a more definite statement of a pleading to which a responsive pleading
28   is allowed"; Fed R. Civ. P. 7 (defining "pleadings" as complaints, crossclaims, answers and

1    Gerstein questions the adequacy of the NSA's search for the reason that the NSA provided

2    to him, in response to a separate, earlier FOIA request, two documents that Gerstein

3    argues should have been, but were not, disclosed in response to the request at issue

4    herein.

5         "The adequacy of the agency's search is judged by a standard of reasonableness,

6    construing the facts in the light most favorable to the requestor." <u>Citizens Comm'n on</u>

7    <u>Human Rights v. Food and Drug Admin.</u>, 45 F.3d 1325, 1328 (9th Cir. 1995).  "The agency

8    must[ ] demonstrate that it has conducted a search reasonably calculated to uncover all

9    relevant documents." <u>Zemansky v. U.S. Envtl. Prot. Agency</u>, 767 F.2d 569, 571 (9th

10   Cir.1985) (internal quotation and citation omitted)).  "In demonstrating the adequacy of the

11   search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted

12   in good faith."  <u>Id</u>.

13        "[T]he issue to be resolved is not whether there might exist any other documents

14   possibly responsive to the request, but rather whether the <u>search</u> for those documents was

15   <u>adequate</u>."  <u>Id</u>.  Consequently, "the failure of an agency to turn up one specific document in

16   its search does not alone render a search inadequate."  <u>See</u> <u>Iturralde v. Comptroller of</u>

17   <u>Currency</u>, 315 F.3d 311, 315 (D.C. Cir. 2003) (citations omitted).

18        Here, with respect to the adequacy of its search, the NSA offers, <u>inter</u> <u>alia</u>, the

19   declaration of Rhea D. Siers ("Siers"), Deputy Associate Director for Policy and Records for

20   the NSA, (<u>see</u> Decl. of Rhea D. Siers ("Siers Decl.") ¶ 1), who describes both the NSA's

21   search procedures in general and the NSA's search for documents responsive to

22   Gerstein's request.  Regarding the NSA's general search procedures, Siers states:

23        [W]hen NSA's FOIA office receives a properly submitted FOIA request, it assigns
          a case number to the request and the request is logged into the [NSA's] FOIA
24        database.  A search of that database is conducted to determine if an identical
          response or similar request will help speed processing in the current case.  If no

25

26   replies to answers).  Rule 56(f) provides that a motion for summary judgment may be
     denied or continued where the opposing party has not had an opportunity to obtain
27   discovery necessary to its opposition.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326
     (1986). Accordingly, the Court construes Gerstein's motion for a more definite statement as
28   a request that the Court deny or defer ruling on defendant's motion, to allow for discovery.

1
2
3

identical or similar case is found, the FOIA intake staff officers identify those organizations within the [NSA] that the staff believes are most likely to have responsive material.  The staff then sends to each of those organizations a search request or a search cost estimate, depending on the requester's fee status. . . .

4
5
6
7
8
9

A search is then conducted in each organization tasked to look for responsive documents.  Each organization may task subordinate offices to search for responsive records.  Both electronic and paper searches for records are generally conducted for FOIA requests.  If and when responsive records are located, standard NSA procedure provides that the documents are forwarded to the FOIA unit.  When the FOIA case officer's review of the records begins, he or she conducts a line-by-line, word-for-word review of the records that have been forwarded.  The case officer's review includes determining whether the records are in fact responsive to the request, whether the responsive records contain information that is exempt from disclosure, and whether any reasonably segregable nonexempt information exists in the responsive record. . . .

10

(See id. ¶¶ 13-14.)  Siers describes the search conducted in response to Gerstein's

11

request, as follows:

12
13
14
15
16

In the present case, all NSA FOIA procedures were followed, and a thorough and adequate search was conducted.  Upon receiving the Plaintiff's FOIA request, a [NSA] FOIA staff officer assigned the request a case number and logged it into the [NSA's] FOIA database.  The officer found no identical or similar FOIA requests within the database.  The officer then contacted those [NSA] components assigned the responsibility for reporting unauthorized disclosures of information pursuant to NSA Policy 1-27 and tasked those organizations to look for any and all documents responsive to the Plaintiff's request.  Accordingly, the NSA components identified 1,506 responsive pages of documents. . . .

17

(See id. ¶ 16.)  Siers' declaration is "reasonably detailed," and "nonconclusory"; there is no

18

evidence it was submitted in bad faith, and it demonstrates the NSA conducted a search

19

"reasonably calculated to uncover all relevant documents."  See Zemansky, 767 F.2d at

20

571.  The declaration thus suffices, as a matter of law, to establish that the NSA conducted

21

an adequate search.  See Citizens Comm'n on Human Rights, 45 F.3d at 1328 (holding

22

declaration demonstrated adequate search, where declaration described agency's search

23

for responsive records at main office and forwarding of request "to seven of its divisional

24

offices"; affirming grant of summary judgment in favor of agency).

25

Indeed, Gerstein does not challenge the methods of the NSA's search as set forth

26

by Siers; rather, he contends the NSA's failure to produce two particular documents in

27

response to his request entitles him to a more definite statement as to the details of the

28

7

1    instant search.[8]  Defendants explain that the subject documents are not responsive to the

2    instant request.  Even assuming such documents are responsive, however, Gerstein's

3    argument is unavailing.  As noted, an agency's failure to identify a specific document in its

4    search "does not alone render a search inadequate," see Iturralde, 315 F.3d at 315 ("[T]he

5    adequacy of a FOIA search is generally determined not by the fruits of the search, but by

6    the appropriateness of the methods used to carry out the search"), and, as set forth above,

7    the NSA has shown its search was conducted in a manner reasonably calculated to identify

8    all responsive documents.

9        Accordingly, defendants are entitled to summary judgment on the issue of the

10   adequacy of each defendants' search, and Gerstein's motion for a more definite statement

11   from the NSA regarding the adequacy of its search will be denied.

12   **II. Defendants' Withholding Under Particular FOIA Exemptions**

13       **A. Adequacy of <u>Vaughn</u> Indices**

14       As an initial matter, in reviewing defendants' withholding of documents under FOIA,

15   the Court must consider whether the "Vaughn indices" produced by defendants are

16   sufficiently detailed to permit the Court to determine whether any of the documents at issue

17   were improperly withheld.

18       A Vaughn index, derived from Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973), is a

19   list "identifying each document withheld, the statutory exemption claimed, and a

20   particularized explanation of how disclosure of the particular document would damage the

21   interest protected by the claimed exemption."  See Wiener v. Federal Bureau of

22   Investigation, 943 F.2d 972, 977 (9th Cir. 1991).  In the FOIA context, courts frequently

23   refer to affidavits submitted on behalf of the government agency as a "Vaughn index."  See,

24   e.g., id. at 978 n.6 (referring to five affidavits filed by FBI and CIA officials, collectively, as

25   "the Vaughn index").

26

27       [8] As noted, Gerstein's motion for a more definite statement is, in essence, an
28   additional motion for discovery; in this instance, Gerstein seeks a court-ordered response
     to certain questions posed by Gerstein.  (See Mot. for More Def. Stmt. at 4; Reply at 5.)

1    "Courts are permitted to rule on summary judgment in FOIA cases solely on the

2    basis of government affidavits describing the documents sought." Lion Raisins v. U.S.

3    Dept. of Agriculture, 354 F.3d 1072, 1082 (9th Cir. 2004) (citation omitted).  "If the affidavits

4    contain reasonably detailed descriptions of the documents and allege facts sufficient to

5    establish an exemption, the district court need look no further." Lane v. Dept. of the

6    Interior, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (internal quotation and citation omitted).

7    Although the government "may not rely upon conclusory and generalized allegations of

8    exemptions," it "need not specify its objections in such detail as to compromise the secrecy

9    of the information."  See Church of Scientology of California v. United States Dept. of the

10   Army, 611 F.2d 738, 742 (9th Cir. 1980).

11       Because the detail required in a Vaughn index depends on the specific exemption

12   claimed, see Weiner, 943 F.2d at 979, the Court will address the adequacy of defendants'

13   Vaughn indices in connection with the specific exemptions on which each defendant relies.

14       **B.  The NRO**

15       In response to Gerstein's FOIA request, the NRO identified a single document

16   pertaining to unauthorized disclosures in general, as opposed to particular leak

17   investigations, and withheld the document in its entirety under Exemptions 1 and 3.  (See

18   Decl. of E. Page Moffett ("Moffett Decl.") ¶¶ 4-6.)

19       Exemption 1 exempts from disclosure "matters that are . . . (A) specifically

20   authorized under criteria established by an Executive order to be kept secret in the interest

21   of national defense or foreign policy and (B) are in fact properly classified pursuant to such

22   Executive order."  See 5 U.S.C. § 522(b)(1).

23       "While the burden of proof is on the agency, a reviewing court must recognize that

24   the Executive departments responsible for national defense and foreign policy matters have

25   unique insights into what adverse [effects] might occur as a result of public disclosures of a

26   particular classified record." Krikorian v. Department of State, 984 F.2d 461, 464 (D.C. Cir.

27   1993).  "Accordingly, [the court] accord[s] substantial weight to an agency's affidavit

28   concerning the details of the classified status of the disputed record."  Id.

E. Page Moffett ("Moffett"), General Counsel of the NRO, asserts that the document, which consists of a 14-page statement by the Director of the NRO, "is classified Top Secret with a number of Special Compartmented Information (SCI) caveats, indicating that the information contained therein is extraordinarily sensitive." (See Moffett Decl. ¶ 5.)

By way of background, Moffett describes the NRO's work as "the research and development, design, acquisition, launch and operation of overhead reconnaissance systems on behalf of the Department of Defense and the Intelligence Community." (See id. ¶ 7.) "In short," Moffett states, "the NRO builds and operates 'spy' satellites, and associated systems, that support our national policymakers and our warfighters." (See id.) Moffett goes on to describe the contents of the withheld document as "a very detailed description, to one of [the NRO's] oversight committees, of the various leaks [to the media] and of the ensuing damage they have caused to [the NRO's] highly classified satellite systems." (See id. ¶ 10.) Moffett further explains that "[r]elease of this document would confirm which particular media leaks were accurate and which were not," the confirmation of which "would allow our enemies to focus their countermeasure efforts to thwart the confirmed capabilities of our satellites, thus causing great damage to our national security," (See id.).

Moffett's affidavit contains a reasonably detailed description of the document and facts sufficient to establish Exemption 1's applicability to the withheld document. See, e.g., Salisbury v. U.S., 690 F.2d 966, 971-72 (D.C. Cir. 1982) (holding affidavit established Exemption 1 applied where affiant described withheld material as "intelligence products classified in their entirety to protect intelligence sources and methods," and stated that revelation of such sources could lead to loss of intelligence "harmful to the national

1  security"). [9, 10]

2      Accordingly, the NRO is entitled to summary judgment on the issue of the propriety

3  of its withholding of the subject document pursuant to Exemption 1.

4      **C.  The NSA**

5      In response to Gerstein's FOIA request, the NSA located 1506 pages of documents.

6  (See Siers Decl. ¶ 17.)  To the extent those documents are not related to specific cases or

7  investigations, the NSA withheld nine documents, either in whole or in part, consisting of a

8  total of 21 pages, pursuant to Exemptions 1, 3, and 5.  (See id. ¶ 21, 27.)  As set forth

9  below, the Court finds each of the documents was properly withheld under Exemption 3.[11]

10      Exemption 3 permits withholding of "matters that are . . . specifically exempted from

11  disclosure by statute (other than section 552b of [Title 5]), provided that such statute

12  (A) requires that the matters be withheld from the public in such a manner as to leave no

13  discretion on the issue, or (B) establishes particular criteria for withholding or refers to

14  particular types of matters to be withheld."  See 5 U.S.C. § 522(b)(3).

15      "A two-part inquiry determines whether Exemption 3 applies to a given case." Minier

16  v. CIA, 88 F.3d 796, 801 (9th Cir. 1996) (citation omitted).  "First, a court must determine

17  whether there is a statute within the scope of Exemption 3."  Id.  "Then, it must determine

18  whether the requested information falls within the scope of the statute."  Id.  "Exemption 3

19  differs from other FOIA exemptions in that its applicability depends less on the detailed

20  factual contents of specific documents; the sole issue for decision is the existence of a

21

---

22      [9] The Court further notes that Gerstein does not suggest in his opposition that the
23  affidavit is not sufficiently detailed or otherwise inadequate to justify the withholding of the
    document by the NRO.

24      [10] Given the Court's finding herein that the document was appropriately withheld by
25  the NRO under Exemption 1, the Court does not address the applicability of Exemption 3
    thereto.  See, e.g., Fund for Constitutional Gov't v. Nat'l Archives and Records Serv., 656
26  F.2d 856, 864 n.19 (D.C. Cir. 1981) (finding, where court determined agency properly
    withheld information under one exemption, court need not consider applicability of other
27  exemption on which agency relied).

28      [11] Given this finding, the Court does not address herein the NSA's arguments in
    support of withholding under Exemptions 1 and 5.

1   relevant statute and the inclusion of withheld material within the statute's coverage."

2   Fitzgibbon v. CIA, 911 F.2d 755, 761-62 (D.C. Cir. 1990); see also Hayden v. NSA, 608

3   F.2d 1381, 1390 (D.C. Cir. 1979) (noting factual showing "to satisfy Exemption 3 is by

4   nature less than for Exemption 1").

5        Here, the NSA identifies § 6 of the National Security Agency Act of 1959, Pub. L. No.

6   86-36, as amended, 50 U.S.C. § 402 note (hereafter "§ 6"), as the statute under which it

7   withheld each of the nine documents.[12]  Section 6 provides, in pertinent part:

8        "[N]othing in this Act or any other law . . . shall be construed to require the
         disclosure of the organization or any function of the National Security Agency, of
9        any information with respect to the activities thereof, or of the names, titles,
         salaries, or number of the persons employed by such agency."

10

11  See Pub.L.No. 86-36, § 6, 73 Stat. 64 (1959), in 50 U.S.C. § 402 note (2007).  Section 6

12  qualifies as a statute under which documents may be withheld pursuant to Exemption 3.

13  See Founding Church of Scientology of Washington, D.C., Inc. v. NSA, 610 F.2d 824, 828

14  (9th Cir. 1979).  The Court next considers whether the requested information falls within the

15  scope of § 6.

16        According to Siers, the Deputy Associate Director for Policy and Records for the

17  NSA, the nine withheld documents consist of the following: (1) "a chart detailing the

18  cryptologic insecurities suffered by NSA during 2006," which chart "contains the dates on

19  which the unauthorized disclosures of information appeared, the sources in which the

20  unauthorized disclosures occurred, the subjects of the unauthorized disclosures, and the

21  origins of the information disclosed," (see Siers Decl. ¶ 25); (2) "two documents totaling two

22  pages" which "contain the rosters for an interagency task force, including the names and

23  phone numbers of NSA employees," (see id. ¶ 27); (3) "five documents totaling 15 pages"

24  and one duplicate document consisting of three pages, which "contain preliminary

25  proposals for handling investigations of unauthorized disclosures," (see id.).

26  _____

27        [12] The NSA asserts that one of the nine documents is further protected from
    disclosure under 18 U.S.C. § 798 and 50 U.S.C. § 403-1(i)(1).  In light of the Court's finding
28  herein that the documents are properly exempted on the basis of § 6, the Court does not
    address herein the applicability of such alternative grounds for exemption.

1    Each of the withheld documents falls squarely within the scope of § 6, for the reason

2    that each such document concerns a "function" of the NSA and contains "information with

3    respect to the activities thereof."  See Pub.L.No. 86-36, § 6.  Specifically, the contents of

4    the first document concern unauthorized disclosures pertaining to the NSA's "intelligence

5    collection assignments" and "the technical details of collection," (see Siers Decl. ¶ 25),

6    which information concerns both the "function" of NSA and one of the fundamental

7    "activities," if not the fundamental activity, of NSA, see Pub.L.No. 86-36, § 6.  With respect

8    to the two documents containing rosters for an interagency task force, public disclosure of

9    said documents would confirm the existence of the task force, as well as the identities of

10   the membership thereof, revealing information about NSA activities in connection with leaks

11   of intelligence information; moreover, disclosure of said documents would reveal "the

12   names . . . of the persons employed by [NSA]."  See id.  The last set of documents,

13   consisting of proposals for handling investigations of unauthorized disclosures, clearly

14   contain "information related to the inner workings of the NSA," (see Siers Decl. ¶ 27), and

15   readily qualify as information concerning the "activities" of the NSA.

16   In sum, § 6 permits the withholding of documents that fall within its scope, and the

17   NSA has described the nature of the intelligence activity implicated by each of the withheld

18   documents with sufficient specificity to show that each such document falls within the scope

19   of the statute.  See, e.g., Hayden, 608 F.2d at 1390-91 (finding NSA met burden under § 6

20   and Exemption 3 where affidavit "ha[d] described the intelligence activity involved, and

21   ha[d] shown why disclosure of requested materials could reveal the nature of that activity").

22   Accordingly, the NSA is entitled to summary judgment on the issue of the propriety

23   of its withholding of the subject nine documents pursuant to Exemption 3.

24   **D.  The CIA**

25   Upon the CIA's processing of Gerstein's FOIA request, the CIA located 270

26   documents responsive thereto.  (See Decl. of Linda Dove ("Dove Decl.") ¶ 36.)  To the

27   extent those documents are not related to individual cases or investigations, the CIA

28   withheld, either in whole or in part, seventeen documents it had located in its own records,

13

1   as well as fourteen documents that had been referred to the CIA by the DOJ;[13] each such

2   document and partial document, the CIA asserts, is exempt from disclosure pursuant to,

3   inter alia, Exemption 3.  (See id. ¶¶ 40, 42, 44.)  As set forth below, the Court finds

4   Exemption 3 is applicable to the seventeen documents and portions of documents located

5   by the CIA in its own records.[14]  With respect to the fourteen documents referred to the CIA

6   by the DOJ, however, the Court finds the affidavit provided by the CIA is not sufficiently

7   detailed to allow the Court to determine whether Exemption 3, or any other exemption,

8   applies.

9        The CIA relies on two statutes to support its withholding of the subject documents

10   under Exemption 3, specifically, § 102A(i)(1) of the National Security Act of 1947, as

11   amended, 50 U.S.C. § 403-1(i)(1) (hereafter "§ 403-1(i)(1)"), and § 6 of the Central

12   Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 403g (hereafter "§ 403g").

13   Section 403-1(i)(1) is broadly-worded and provides: "The Director of National Intelligence

14   shall protect intelligence sources and methods from unauthorized disclosure."  See 50

15   U.S.C. § 403-1(i)(1).  Section 403g, by comparison, is more specific, in that it exempts the

16   CIA from disclosing certain categories of information, as follows:

17        "In the interests of the security of the foreign intelligence activities of the United
         States and in order further to implement section 403-1 of this title . . . the Agency
18       shall be exempted . . . [from disclosing] the organization, functions, names,
         official titles, salaries, or numbers of personnel employed by the Agency."
19

20   See 50 U.S.C. § 403g.  Each of said statutes qualifies as a statute under which documents

21   may be withheld pursuant to Exemption 3.  See Berman v. CIA, 501 F.3d 1136, 1140 (9th

22   Cir. 2007) (holding § 403-1(i)(1) constitutes statutory basis for Exemption 3); Wiener v. FBI,

23   943 F.2d 972, 983 (9th Cir. 1991) (holding § 403g constitutes statutory basis for Exemption

24   3).

25

26        [13] "A 'referral' occurs when an agency [other than the CIA] locates responsive
     information that originated with the CIA.  In such a case, that agency transmits the
27   document to the CIA for a direct response to the FOIA requester."  (Dove Decl. ¶ 11 n.3.)

28        [14] In light of this finding, the Court does not address herein the CIA's reliance on
     other exemptions to support such withholding.

14

Turning to the question of whether the information requested herein falls within the scope of § 403-1(i)(1) or § 403g, the Court first notes the heightened degree of deference given to, and the lesser level of specificity required of, CIA affidavits concerning documents withheld under Exemption 3.  Specifically, the Court, when considering the CIA's showing under Exemption 3, is "required to give 'great deference' to the CIA's assertion that a particular disclosure could reveal intelligence sources or methods," see Berman, 501 F.3d at 1140 (quoting CIA v. Sims, 471 U.S. 159, 179 (1985)).[15]  "CIA affidavits must," however, "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of CIA bad faith."  See Hunt, 981 F.2d at 1119.

In the instant case, Gerstein, in addition to his more general challenge, singles out the CIA's reliance on § 403g in withholding CIA file numbers on documents, as well as the adequacy of the CIA's Vaughn index with respect to Document Number 1396562.[16] Gerstein's argument in this regard is unavailing.  First, contrary to Gerstein's argument, the CIA may properly withhold file numbers under § 403g "as information concerning the CIA's internal structure."  See Fitzgibbon v. CIA, 578 F.Supp. 704, 723 (D. D.C.1983).  Second, the CIA has provided sufficient detail in its Vaughn index to establish Document Number 1396562 was properly withheld under Exemption 3.  The relevant entry in the Vaughn index describes the subject document as "a 2-page document outlining CIA/Office of Security procedures regarding investigations of unauthorized disclosures."  (See Dove Decl. Ex. A

---

[15] As the Ninth Circuit has observed, there exists, subsequent to the Supreme Court's application of Exemption 3 to CIA records in Sims, "a near-blanket FOIA exemption" for CIA records.  See Hunt v. CIA, 981 F.2d 1116, 1118 & 1120 (9th Cir. 1992) (recognizing ruling in Sims leaves courts "only a short step from exempting all CIA records from FOIA") (internal quotation and alteration omitted).

[16] Gerstein initially challenged the propriety of the CIA's withholding pursuant to § 403-1(i)(1), on the ground the CIA lacked specific authorization for such withholding from the Director of National Intelligence.  The CIA subsequently submitted supplemental documentation supporting such authorization, (see Second Decl. of Linda Dove Ex. A), and Gerstein, in his sur-reply, concedes the CIA has met such requirement, (see Pl.'s Sur-reply at 2:11-12).

1    at unnumbered 7.)  The entry further specifies that the document contains discussion

2    regarding, inter alia, "the office's efforts to prevent and deter unauthorized disclosures, the

3    office's investigative techniques, [and] possible means for disciplining individuals who make

4    unauthorized disclosures," and that the information contained therein "details the methods

5    by which the CIA deters and investigates unauthorized disclosures, and identifies

6    weaknesses and problems in the CIA's approach."  (See id.)

7         Such description provides, in reasonably specific detail, sufficient justification for

8    nondisclosure, in that the CIA's critical self-analysis and identification of the weaknesses of

9    its approach to preventing unauthorized disclosures would logically reveal intelligence

10   methods.  The description likewise demonstrates that the information in the document,

11   which concerns prevention of unauthorized leaks as well as the CIA's "investigative

12   techniques," (see id.), logically falls within the category of "intelligence methods" protected

13   by § 403-1(i)(1).  Further, the CIA's justification for withholding such document is not

14   "controverted by contrary evidence in the record or by evidence of CIA bad faith."  See

15   Hunt, 981 F.2d at 1119.

16        With respect to the documents, or portions of documents, withheld by the CIA under

17   Exemption 3 and to which Gerstein's objection to withholding is not made on an individual

18   basis, the Court finds the remaining sixteen documents located in the CIA's records were

19   properly withheld under § 403-1(i)(1), but that the CIA's affidavit is insufficient to support its

20   withholding of the fourteen documents referred to the CIA by the DOJ.  The Court first

21   addresses the withheld documents that were located in the CIA's records.

22        As set forth in the declaration of Linda Dove ("Dove"), Information Review Officer for

23   the Directorate of Support of the CIA, the sixteen withheld documents consist of the

24   following: (1) nine documents concerning "one unauthorized disclosure investigation that

25   resulted in disciplinary action taken against a CIA employee," (see Dove Decl. ¶ 38)[17]; (2) a

26

27        [17] The document referenced above to which Gerstein expressly objected,
     specifically, Document Number 1396562, constitutes the tenth document in this category.
28   (See id.)

16

letter from the CIA to the CRM, "alerting the Criminal Division to the disciplinary action that the CIA took against two CIA contractors," (see id. ¶ 39); and (3) six charts, organized by year, "of criminal referrals for unauthorized disclosures," (see id. ¶ 41).

Each of the sixteen documents falls squarely within the scope of § 403-1(i)(1), for the reason that each such document concerns information regarding "intelligence sources and methods." See 50 U.S.C. § 403-1(i)(1). Dove explains how the release of information regarding unauthorized disclosures would be harmful, as follows:

> The information relating to intelligence sources and methods and intelligence activities contained in these documents is in most instances substantive details of the unauthorized disclosures for which the CIA made criminal referrals. For example, the six documents [which consist of charts of criminal referrals] show, for each unauthorized disclosure criminal referral, the title of the publication, the author, and the date of publication. Disclosure of this information would reveal the specific instances in which the CIA determined that an unauthorized disclosure of classified information was made. This would confirm that the publications included an unauthorized disclosure and would, inevitably, disclose and authenticate the very classified information that was illegally disclosed.
>
> For example, if an article disclosed a classified fact, and it were revealed that the CIA made a criminal referral for an unauthorized disclosure on that specific article, this revelation could confirm the classified fact, its classification, and the connection between the CIA and that classified fact. In some instances it might be more difficult to discern the classified information from a particular article, given only its title, author, and date, but in others it could be quite clear.

(See Dove Decl. ¶¶ 61-62.) In short, Dove explains, "[d]isclosure of this information could reasonably cause harm to national security in addition to the harm caused by the unauthorized disclosure." (See id. ¶ 63.)

Additionally, Dove identifies the various ways in which release of the subject documents would compromise "intelligence sources." In particular, Dove attests, release of the information contained therein could place "the safety and welfare of the [intelligence] source, his family and even his associates . . . in jeopardy," (see id. ¶ 66), and "could also hamper future cooperation with sources" because release of such information "would likely discourage other sources from cooperating with the CIA at a time when international cooperation is critical to combating terrorism," (see id. ¶ 67).

Dove further points out that "intelligence methods," such as "[s]ecret information

collection techniques[,] . . . are valuable from an intelligence-gathering perspective only so long as they remain unknown and unsuspected." (See id. ¶ 68.)  Dove identifies one of the intelligence methods used by the CIA as a procedure involving "the means by which CIA assesses, evaluates, and acquires sources or potential sources," and states that the release of the withheld information would "reveal[ ] CIA's recruitment, assessment, and use of human intelligence sources, covert CIA facilities, and [ ] the manner in which the CIA pursued its interests and intelligence activities in several countries."  (See id. ¶ 70.)

As described, each of the documents located in CIA records concerns either disciplinary action taken by the CIA against a CIA employee or contractor for unauthorized disclosures, (see id. ¶¶ 38, 39), or referrals made by the CIA to the DOJ for potential criminal proceedings based on unauthorized disclosures, (see id. ¶ 41).  Such documentation is protected from disclosure under § 403-1(i)(1) as information containing CIA's "intelligence methods," in that the release of the subject documents would confirm the timing and manner in which an unauthorized disclosure had taken place, which would, as Dove attests, "authenticate the very classified information that was illegally disclosed," (see id. ¶ 61), and could "confirm the classified fact, its classification, and the connection between the CIA and that classified fact," (see id. ¶ 62).  The information is further protected under § 403-1(i)(1) as information pertaining to the CIA's "intelligence sources," for the reason that the documents' confirmation of unauthorized leaks would, as noted, confirm the CIA's possession of the leaked information and would permit individuals in the public to make reasonable inferences as to the sources of such CIA intelligence; such public knowledge of CIA sources would, in turn, inhibit cooperation with the CIA by current or potential sources.  (See, e.g., id. ¶ 67.)

In sum, the affidavit provided by the CIA adequately describes the agency's justifications for nondisclosure and demonstrates that the sixteen documents logically fall within the scope of § 403-1(i)(1), which showing, in turn, establishes said documents are properly withheld under Exemption 3.  See, e.g., Miller v. Casey, 730 F.2d 773, 777 (D.C. Cir. 1984) (holding Exemption 3 properly applied where CIA affidavit identified three

1   possible ways acknowledgment of document "could jeopardize confidentiality of intelligence

2   sources or methods," including by "providing critical confirmation which would allow . . .

3   identif[ication of] participants in . . . covert action" and "damaging future CIA efforts to

4   recruit sources").

5         With respect to the group of fourteen documents referred from the DOJ, which

6   documents concern an "Inter-Agency Task Force on Unauthorized Disclosures," (see Dove

7   Decl. ¶ 43), however, the affidavit provided by the CIA is insufficient to demonstrate said

8   documents were properly withheld under Exemption 3.  In particular, the affidavit does not

9   "describe the justifications for nondisclosure with reasonably specific detail," see Hunt, 981

10   F.2d at 1119, or "demonstrate that the information withheld logically falls within the claimed

11   exemptions," see id.  Rather, the affidavit merely describes the documents, as a group, as

12   "related to the Inter-Agency Task Force on Unauthorized Disclosures that submitted a

13   report to Congress in 2002," (see Dove Decl. ¶ 43), and states that "[t]he information

14   withheld from these documents was withheld on the basis of FOIA exemptions (b)(2),

15   (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and b(7)(E)," (see id. ¶ 44).[18]  The additional

16   statement that "twelve of the documents referred to CIA by DOJ . . . contain information

17   regarding the organization, functions, names, and official titles of personnel employed by

18   the CIA, as well as internal organizational information such as file numbers," (see id. ¶ 79),

19   similarly fails to provide the requisite "reasonably specific detail."  See Hunt, 981 F.2d at

20   1119.

21         Although the applicability of Exemption 3 may "depend[ ] less on the content of

22   specific documents than the other exemptions do," see Miller, 730 F.2d at 777 (citation

23

24        [18] To the extent the CIA's affidavit suggests said documents are addressed in some
manner in the Vaughn index, (see, e.g., id. (statement that Dove "conducted a line-by-line
25   review of these documents and, as indicated in the attached Vaughn index, determined that
nine documents could be released in segregable form)), the Vaughn index is incomplete
26   with respect to said documents, in that it contains only six entries related to documents
referred from the DOJ, only five of which entries concern documents that were released in
27   segregable form.  (See id. Ex. A.)  Further, due to the general description of the documents
provided in the affidavit, it cannot be determined which of said documents are addressed
28   by an entry in the Vaughn index and which have been omitted therefrom.

1  omitted), the CIA nonetheless must provide a sufficiently detailed description of the

2  withheld document or information such that the Court is able to determine, as it must for

3  purposes of Exemption 3, whether the "withheld material [falls] within the statute's

4  coverage," see Fitzgibbon, 911 F.2d at 761-62.  With respect to the group of fourteen

5  documents referred by the DOJ, the CIA has failed to do so.  Moreover, the CIA's proffered

6  rationale for withholding said documents is conclusory and thus insufficient to justify

7  withholding under Exemption 3.  See Hunt, 981 F.2d at 1119 (holding "CIA affidavits must

8  describe the justifications for nondisclosure with reasonably specific detail [and]

9  demonstrate that the information withheld logically falls within the claimed exemptions");

10 see also Wiener, 943 F.2d at 983 (finding CIA affidavit insufficient to justify Exemption 3

11 withholding, where affidavit "failed to discuss the facts or reasoning" behind affiant's

12 conclusion that disclosure could "lead to identification of the source of information").

13 Further, due to the CIA's treatment of the documents as a group rather than a discussion of

14 each individual document, the Court is unable to determine which exemption, of those

15 exemptions listed, the CIA may be asserting with respect to each of the particular

16 documents, much less whether any asserted exemption properly applies to each such

17 document.[19]

18    Where an agency's affidavit is determined to be insufficient, and it appears that a

19 more detailed affidavit could be presented, the court should permit the agency to provide a

20 more detailed affidavit.  See, e.g., Wiener, 943 F.2d at 979 (remanding for submission of

21 more detailed Vaughn index, where agency, in original Vaughn index, "did not disclose all it

22 could"; noting in camera review "appropriate only after the government has submitted as

23 detailed public affidavits and testimony as possible").  In the instant case, because it

24 appears the CIA could provide a more detailed affidavit with respect to the fourteen

25

26    [19] Absent individual identification of each document referred by the DOJ, the CIA's
27 assertion that other exemptions are applicable to various groups or sub-groups of such
   documents fails to clarify the CIA's position in this regard.  (See, e.g., Dove Decl. ¶ 83
28 (asserting "10 of the documents that DOJ referred to CIA" contain information protected by
   Exemption 5, without specifying individual documents).)

documents referred by the DOJ, the Court will, in this instance, afford CIA the opportunity to do so.  Such greater detail would both afford Gerstein a meaningful opportunity to either accept or object to such withholding and permit the Court to determine, if later called upon to so rule, whether such documents were properly withheld.  See id. (noting one of purposes of Vaughn index, is "to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest").

The Court next addresses Gerstein's cross-motion for partial summary judgment, in which Gerstein argues, inter alia, he is entitled to summary judgment on the issue of the CIA's withholding of documents under Exemption 2.  Specifically, Gerstein asserts, the CIA has waived Exemption 2 as to file numbers contained in two documents referred to the CIA by the DOJ, by failing to raise it as a ground for withholding in it's moving papers.  In its opposition, the CIA asserts such failure was "inadvertent," (see Defs.' Opp'n to Pl.'s Cross-Mot. for Partial Summary J. at 3 n.3), and, in its reply filed concurrently therewith, provides its argument in support of such withholding, (see Defs.' Reply Memo. in Support of Defs.' Mot. for Partial Summary J. at 8 n.7).  In his reply, Gerstein does not challenge the CIA's proffered excuse for such omission.  Further, Gerstein has addressed on its merits the CIA's argument regarding withholding under Exemption 2.  (See Pl.'s Sur-Reply at 3:3-22.)

The Court finds the CIA has made an adequate showing as to excusable neglect and further finds Gerstein has incurred no prejudice from the delay.  Accordingly, Gerstein is not entitled to summary judgment on the issue of the CIA's waiver of Exemption 2.  As noted above, however, the CIA has failed to provide, under any of its claimed exemptions, sufficient evidentiary support for its withholding of the documents referred from the DOJ.

Accordingly, the CIA is entitled to summary judgment on the issue of the propriety of its withholding of the seventeen documents located in the CIA's records pursuant to Exemption 3; the CIA is not entitled to summary judgment on the issue of the propriety of its withholding of the fourteen documents referred by the DOJ.

**E.  The OIP**

The OIP[20] located 1096 pages of records responsive to Gerstein's FOIA request, of which it referred 152 pages to other DOJ departments or government agencies it determined maintained a primary interest in such material, (see Decl. of Melanie Ann Pustay, Ex. 7 to Defs.' Mot. for Partial Summary J. ("First Pustay Decl.") ¶ 23), and disclosed 257 pages in full to Gerstein, (see Decl. of Melanie Ann Pustay, Ex. 9 to Defs.' Mot. for Partial Summary J. ("Third Pustay Decl.") ¶ 10).  Of the remaining records, the OIP withheld 109 pages in part and 611 pages in full pursuant to Exemption 5.  (See id.)  The OIP claims that all 720 pages of records withheld, in whole or in part, are protected by the deliberative process privilege under Exemption 5, (see id. ¶ 13), and that four pages of records included therein are, in addition, protected by the presidential communications privilege, (see id.).[21]

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  See 5 U.S.C. § 552(b)(5).  Pursuant to Exemption 5, an agency may "withhold[ ] from a member of the public[,] documents which a private party could not discover in litigation with the agency," see NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148 (1975); in other words, Exemption 5 exempts from disclosure "those documents, and only those documents, normally privileged in the civil discovery context," see id. at 149.

The deliberative process privilege has been identified as a privilege that may be invoked for the purpose of withholding documents under Exemption 5.  See Maricopa Audubon Society v. United States Forest Service, 108 F.3d 1089, 1092 (9th Cir. 1997) (noting privileges recognized for purposes of Exemption 5, including deliberative process privilege).  In general, the deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by

---

[20] As noted, the OIP is the Office of Information and Privacy within the DOJ.

[21] Because, as set forth below, the Court finds each of the records was properly withheld under the deliberative process privilege, the Court does not reach the OIP's arguments in support of withholding under the presidential communications privilege.

which governmental decisions and policies are formulated."   See Dep't of the Interior v.
Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (internal quotation and citation
omitted).

Each document withheld pursuant to the deliberative process privilege "must be
'predecisional' in nature and must also form part of the agency's 'deliberative process.'"
See Maricopa, 108 F.3d at 1093 (citation omitted) (emphasis in original).  "A predecisional
document is one prepared in order to assist an agency decisionmaker in arriving at his
decision, and may include recommendations, draft documents, proposals, suggestions, and
other subjective documents which reflect the personal opinions of the writer rather than the
policy of the agency."  See id. (internal quotation and citation omitted).  "A predecisional
document is part of the 'deliberative process,' if 'the disclosure of [the] materials would
expose an agency's decisionmaking process in such a way as to discourage candid
discussion within the agency and thereby undermine the agency's ability to perform its
functions.'"  See id. (citation omitted); see also NLRB, 421 U.S. at 150 (noting "human
experience teaches that those who expect public dissemination of their remarks may well
temper candor with a concern for appearances . . . to the detriment of the decisionmaking
process"); Klamath Water Users, 532 U.S. at 8-9 (noting "[t]he deliberative process
privilege rests on the obvious realization that officials will not communicate candidly among
themselves if each remark is a potential item of discovery and front page news").

The withholding agency "bears the burden of establishing the character of the
decision, the deliberative process involved, and the role played by the documents in the
course of that process."  See Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't
of State, 818 F.Supp. 1291, 1297 (N.D. Cal.1992) (internal quotation and citation omitted).

Here, the OIP submits the declaration of Melanie Ann Pustay ("Pustay"), Director of
the OIP, in which Pustay classifies the documents withheld by the OIP into nine groups.
The first four groups of documents are summarized as follows: (1) "unsigned, usually
undated, draft letters and memoranda, many with extensive handwritten notes," constituting
"preliminary versions of what will later become a final document," (see Third Pustay Decl. ¶

23

15); (2) "handwritten notes containing sentence fragments, questions, and other notations reflecting legal analyses," "a copy of the March 31, 1982 'Williard Report' on classified leaks and a copy of the Attorney General's October 15, 2002 letter to Congress on the classified leaks task force," both of which contain "unsegregable marginalia and notations," and copies of federal statutes containing "extensive notes and marginalia which likewise could not be segregated," (see id. ¶ 18); (3) documents "created pursuant to the classified leaks task force, and the working groups under the umbrella of that task force," such as, for example, "working group meeting summaries," (see id. ¶ 21); (4) "e-mail messages pertaining to the preparation of the Attorney General's report to Congress," which messages consist of "commentaries on and discussions of the proposed content and formatting of the report," (see id. ¶ 16).

The latter five groups of documents are summarized as follows: (5) a memorandum from the Office of Legislative Affairs to the Office of Management and Budget, which memorandum contains the DOJ's views on suggested revisions to the Intelligence Authorization Act for Fiscal Year 2001, (see id. ¶ 22); (6) memoranda that "relate to the establishment of the classified leaks task force, and address initial considerations to be addressed in anticipation of its creation, including proposed issues and preliminary questions, and recommendation on selecting a task force chair," (see id. ¶ 23); (7) memoranda and reports on the investigation of classified leaks, which include views on a draft report to the Office of Management and Budget and recommendations by the interagency task force on classified leaks, (see id. & attached Vaughn index at unnumbered 3-4); (8) an unsigned, undated summary and assessment of the recommendations made in the "Willard Report" and an unsigned, undated document containing recommendations for implementation of whistleblower protections, (see id. & attached Vaughn index at unnumbered 4); and (9) a three-page "letter from former Deputy Attorney General Jamie Gorelick to the Deputy Assistant to the President for National Security Affairs, . . . providing the [DOJ's] views and advice on the handling of classified leaks," and a portion of a one-

page document that describes said letter, (see id. ¶ 27).[22]  Pustay's affidavit, combined with

the supplemental information in the Vaughn index attached thereto, demonstrates that the

subject documents fall within the scope of the deliberative process privilege under

Exemption 5.

As an illustration of the type of detailed information contained in the Vaughn index

accompanying the Pustay Declaration, the above-referenced third group of documents is

described as consisting of the following:

> Documents comprising the "work product" of the working groups on classified
> leaks, including taskings, analyses, comments, recommendations, agendas with
> handwritten notations, interim reports offering proposals and analyses, group
> goals and questions for consideration
>
> Summaries of six separate working group chair meetings discussing back and
> forth between meeting participants
>
> One e-mail message from the [Principal Associate Attorney General] to members
> of three classified leaks working groups, soliciting comments on particular areas
> of interest of the leaks task force

(See id. Vaughn index at unnumbered 2.)

As exemplified by the above-quoted entry, Pustay's affidavit and the Vaughn index

attached thereto contain detailed, particularized descriptions of the withheld documents

sufficient to establish that each such document "reflect[s] advisory opinions,

recommendations and deliberations comprising part of a process by which governmental

decisions and policies are formulated."  See Klamath Water Users, 532 U.S. at 8.  The

disclosure of any of the subject materials, and particularly the internal assessments and

recommendations contained in memoranda and memorialized in documents emanating

from working groups, would expose the OIP's decisionmaking process in a way that would

"discourage candid discussion within the agency."  See Maricopa, 108 F.3d at 1093 (finding

internal investigative report and portions of accused official's letter responsive thereto

_____

[22] Contrary to Gerstein's suggestion that Exemption 5 does not cover the four pages
of records described in the ninth group, for the reason that the documents were directed to
an official on the National Security Council, such documents qualify for protection under
Exemption 5, because their "source [is] a Government agency."  See Kalmath Water Users,
532 U.S. at 8.  Gerstein does not contend the DOJ, the "source" of the four pages at issue,
is not a government agency.

1  properly withheld by agency under deliberative process privilege, where disclosure of

2  subject materials "would be likely in the future to stifle honest and frank communication

3  within the agency").  In sum, the OIP has adequately demonstrated that the withheld

4  documents "were prepared in order to assist an agency decisionmaker in arriving at his

5  decision," and that each such document is part of the OIP's "deliberative process."  See id.

6       Accordingly, the OIP is entitled to summary judgment on the issue of the propriety of

7  its withholding of 720 pages of records pursuant to the deliberative process privilege under

8  Exemption 5.

9       **F.  The CRM**

10      In response to Gerstein's FOIA request, the CRM[23] located 67 responsive

11  documents in its own records, (see Decl. of Pamela A. Roberts ("Roberts Decl.") ¶¶ 8-12),

12  and was referred 35 additional responsive documents originating from other agencies, (see

13  id. ¶¶ 14-16).  Among those documents not related to specific cases or investigations, the

14  CRM withheld 34 documents, in whole or in part, pursuant to the deliberative process

15  privilege under Exemption 5, (see id. ¶ 25-27), portions of six documents pursuant to

16  Exemptions 6 and 7(C), (see id. ¶¶ 40), and "four deletions" on one page of one document

17  pursuant to Exemption 3, (see id. ¶ 22).  To the extent the CRM withheld information under

18  Exemption 6, Gerstein does not dispute such withholding, (see Pl.'s Opp'n at 23:1-4);

19  Gerstein likewise  does not contend the CRM improperly withheld information under

20  Exemption 3, (see, e.g., id. at 11-16).  With respect to the 34 withheld documents withheld

21  under Exeption 5, the CRM subsequently determined one of such documents is not

22  responsive to Gerstein's request, for the reason that the leak investigation identified in the

23  document "does not involve disclosure of classified information and is unrelated to national

24  security matters."  (See Roberts Decl. ¶ 27 (Item 42).)  For the reasons set forth below, the

25  Court finds the CRM's withholding of the remaining 33 documents was proper under

26  Exemption 5.

27

28      [23] As noted, the CRM is the Criminal Division within the DOJ.

1    To justify such withholding, the CRM submits the affidavit of Pamela A. Roberts

2 ("Roberts"), a Litigation Attorney for the CRM's Freedom of Information Act/Privacy Act

3 Unit.  (See Roberts Decl. ¶ 1.)  Roberts' affidavit is exemplary in both its organization and

4 the level of detail provided.  Roberts sets forth therein, by separate listing for each of the 33

5 relevant documents, the "Item number" assigned to the document, the date, if any, of the

6 document, the length of the document, the title of the document, a brief summary of the

7 contents of the document, and a statement of whether the document was withheld in part or

8 in full.  (See, e.g., id. ¶ 25.)  For example, the entry for one document withheld by the CRM

9 reads:

> Item 44 - This is a nine page document dated February 28, 2002, entitled,
> "Criminal Division Proposed Recommendations."  This document contains a
> recommendation and analysis discussing relevant case law relating to
> unauthorized disclosures of classified information.  Withheld in full.

(See id.)  The Court need not reiterate the description of each of the 33 documents in order

to demonstrate each was properly withheld; rather, the Court notes four further examples

as representative of the nature of the documents withheld and the sufficiency of the CRM's

justification therefor.

> Item 49 - This is a five page document dated April 1, 2002, entitled, "Draft,
> Criminal Statutes Applicable to Unauthorized Disclosures of Classified
> Information."  This is a draft document discussing applicable statutes regarding
> the disclosure of classified information.  Withheld in full.

> Item 50 - This is an undated one page document listing study groups with
> proposed issues for each group to address in regard to protecting classified
> information.  Withheld in full.

> Item 84 - This is a two page document dated February 28, 2002, entitled,
> "Litigation Group, Proposed Recommendations."  This document contains a list
> of proposed recommendations regarding the leaking of classified information with
> handwritten notations.  Withheld in full.

> Item 123b - This is a one page e-mail between John Dion and Daniel Koffsky
> dated February 6, 2002, regarding the leaks project.  This e-mail contains an
> informal response explaining a legal opinion by the Criminal Division concerning
> unauthorized leaks of classified information prosecutions.  Withheld in full.

(See id. ¶¶ 25-27.)

As illustrated by the entries set forth above, the withheld documents were "prepared

in order to assist an agency decisionmaker in arriving at his decision," see Maricopa, 108

27

1    F.3d at 1093.  Item 84, for example, was created for the purpose of providing
2    recommendations to assist the CRM's decisionmaker in evaluating alternative courses of
3    action for preventing the disclosure of classified information.  Additionally, the documents,
4    for example, Item 49, include "draft documents", as well as "proposals," as set forth in Items
5    50 and 84, and "which reflect the personal opinions of the writer rather than the policy of
6    the agency."  See id.  Further, the disclosure of such documents "would expose an
7    agency's decisionmaking process in such a way as to discourage candid discussion within
8    the agency and thereby undermine the agency's ability to perform its functions.'"  Id.
9    (citation omitted).  Specifically, were documents such as the document listed as Item 123b
10   to be disclosed, CRM personnel would be unable to engage in candid discussion within the
11   agency, including by e-mail, knowing their comments and internal policy communications
12   may later be made public.

13         Accordingly, the CRM is entitled to summary judgment on the issue of the propriety
14   of its withholding of documents pursuant to Exemption 3, Exemption 6, and the deliberative
15   process privilege under Exemption 5, and plaintiff's motion for partial summary judgment
16   with respect to the propriety of the CRM's withholdings will be denied.

17         **G.  The OPR**

18         The OPR[24] located 328 documents responsive to Gerstein's FOIA request.  (See
19   Vaughn Decl. of Mary Anne Hoopes ("Hoopes Decl.") ¶ 46.)  Of said responsive
20   documents, the OPR withheld 75 documents in part, as well as 13 documents in full, under
21   six exemptions, each such exemption covering a subset of the documents, as set forth
22   below.  (See id. ¶ 46(e), (h).)

23         To justify such withholding, the OPR provides the declaration of Mary Anne Hoopes
24   ("Hoopes"), Associate Counsel at the OPR, who supervised the OPR Freedom of
25   Information Act Specialist responsible for processing FOIA requests at the time Gerstein
26   submitted his request to the OPR.  (See Hoopes Decl. ¶¶ 1-2.)  Hoopes states therein that,

27

28         [24] As noted, the OPR is the Office of Professional Responsibility within the DOJ.

28

with respect to the 75 documents withheld in part, the exemptions are applicable as follows:
(1) portions of 71 documents are protected under Exemption 2; (2) portions of 14
documents are protected by Exemption 5; (3) portions of 6 documents are protected by
Exemption 6; (4) portions of 65 documents are protected by both Exemptions 6 and 7(C);
(5) a portion of one document is protected by Exemption 7(E).  (See id. ¶ 46(e).)  With
respect to the 13 documents withheld in full by the OPR, Hoopes states that: (1) 5
documents are protected by Exemption 2; (2) 12 documents are protected by Exemption 5;
(3) 3 documents are protected by Exemption 6; and (4) 3 documents are protected by both
Exemptions 6 and 7(C).  (See id. ¶ 46(h).)

To the extent the OPR withheld information under Exemption 6, Gerstein does not
dispute such withholding, (see Pl.'s Opp'n at 23:1-4); Gerstein likewise does not dispute the
withholding of "telephone numbers, fax numbers, and computer file names, allegation
codes and location identifiers" pursuant to Exemption 2, (see id. at 11:12-13), which types
of information appear to constitute the majority of the OPR's withholding under Exemption
2, (see, e.g., Hoopes Decl. ¶ 46(e)(ii) (stating 4 documents withheld in part "to protect
against disclosure of computer pathnames"), ¶ 46(e)(iii) (stating 65 documents withheld in
part "to protect against disclosure of OPR case file numbers, allegation codes and locations
codes").)  Gerstein's acknowledgment that certain types of information need not be made
public likely implicates a considerable part of the documents withheld by the OPR,
specifically, portions of 71 documents for which Exemption 2 is claimed, portions of 6
documents for which Exemption 6 is claimed, portions of 65 documents for which both
Exemptions 6 and 7(C) are claimed, 5 documents withheld in full under Exemption 2, and 3
documents withheld in full under Exemption 6.  (See id. ¶ 46(e), (h).)  It cannot be
determined, however, from Hoopes' declaration and the accompanying indices, (see
Hoopes Decl. Exs. K, M), whether the numerous documents for which the OPR claims
protection under either Exemption 2 or Exemption 6 also contain other redacted
information, for which neither of such exemptions is claimed as a basis for withholding.

Moreover, the information submitted by the OPR does not appear to be complete.

1    First, the document titled "Exemption Summary Index for Documents Disclosed in Part,"

2    (see id. Ex. K), identifies, describes, and provides a rationale for the OPR's partial

3    withholding of only 32 documents, whereas Hoopes states the OPR withheld 75 documents

4    in part, (see id. ¶ 46(e)).

5          Second, Hoopes' declaration, as well as the above-referenced Summary Index and

6    the "Exemption Summary Index for Documents Withheld in Full," (see id. Ex. M), refer, in

7    each instance, to what appears to be a combined Vaughn index, of 79 pages in length, that

8    "provides a detailed description of each document, the nature and type of information

9    withheld, and the justification for withholding that information." (See id. ¶ 83 (citing to

10   "Vaughn index" located at Exhibit Y); id. Ex. K (same); id. Ex. M (same).)  Moreover, each

11   entry in the Summary Indices directs the reader to the Vaughn index, located in Exhibit Y,

12   "for detailed discussion." (See, e.g., id. Ex. K at 1.)[25]  The OPR fails, however, to attach to

13   the Hoopes Declaration, or otherwise submit, the combined, and assertedly more detailed,

14   Vaughn index.  Absent such detailed descriptions as are purportedly contained therein, the

15   Court is unable to determine whether the retained documents, or portions thereof, were

16   properly withheld under any of the asserted exemptions.  As with the CIA, however, the

17   Court will afford the OPR an opportunity to supplement its showing.

18         Accordingly, the OPR is not entitled to summary judgment on the issue of the

19   propriety of its withholding of the subject documents.

20   **III.  In Camera Review**

21         As noted, Gerstein requests in camera review of a subset of the documents withheld

22   either in whole or in part pursuant to the "deliberative process" privilege under Exemption 5.

23   Gerstein does not dispute the withholding or seek in camera review of draft documents

24   where the final version of such document was released, documents consisting of hand-

25   annotated statutes or reports, or documents containing classified information.  (See Pl.'s

26

27         [25] The OPR's "Exemption Summary Index for Documents Withheld in Full," (see id.
     Ex. M), refers to a Vaughn index both at Exhibit Y, (see id. Ex. M at 1), and at Exhibit X,
28   (see id. Ex. M at 2, 3).  Neither Exhibit Y nor Exhibit X were submitted to the Court.

1   Mot. for In Camera Review at 3:4-10.)

2        Under FOIA, the district court has the discretion "to examine the disputed documents

3   in camera for a first-hand determination of their exempt status."  See Church of Scientology

4   of California v. U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1979).  As the Ninth Circuit

5   has cautioned, however, in camera inspection should not be used to replace the

6   government's burden in FOIA cases:

7            We cannot stress strongly enough . . . that the district court's inspection
             prerogative is not a substitute for the government's burden of proof, and should
8            not be resorted to lightly. In cases involving requests for hundreds of documents,
             no trial court can reasonably be expected to wade through a mass of exhibits in
9            camera.

10  See id.; see also Weiner, 943 F.2d at 979 ("In camera review of the withheld documents by

11  the court is not an acceptable substitute for an adequate Vaughn index.").  Consequently,

12  "resort to in camera review is appropriate only after the government has submitted as

13  detailed public affidavits and testimony as possible."  Weiner, 943 F.2d at 979. (internal

14  quotation and citation omitted).

15       To the extent the OIP and the CRM have demonstrated, by affidavits filed in the

16  public records, the propriety of their respective withholdings under Exemption 5's

17  deliberative process privilege, in camera review is not warranted.  See Lewis v. IRS, 823

18  F.2d 375, 378 (9th Cir. 1987) (holding "district courts need not and should not make in

19  camera inspections where the government has sustained its burden of proof on the claimed

20  exemptions by public testimony or affidavits"); see also Hayden v. NSA, 608 F.2d 1381,

21  1387 (D.C. Cir. 1979) (noting "[w]hen the agency meets its burden by means of affidavits,

22  in camera review is neither necessary nor appropriate").  Similarly, to the extent the NSA

23  has demonstrated it properly withheld documents under Exemption 3, in camera review of

24  such documents for purposes of determining the applicability of Exemption 5 is not

25  necessary.

26       With respect to documents for which the `withholding has not been adequately

27  supported by the agency's current declarations, specifically, the group of fourteen

28  documents referred to the CIA by the DOJ and all documents withheld by the OPR, the

31

Court is not persuaded that the respective agencies have provided as detailed a showing

as possible with respect to the applicability of the asserted exemptions and, accordingly,

the Court will permit those agencies to supplement their showing with more detailed

declarations, rather than resorting, at this stage of the proceedings, to in camera review.

See Pollard v. FBI, 705 F.2d 1151, 1153-54 (9th Cir. 1983) ("If the government's initial

attempts to provide justification for its claimed exemption fail to provide a sufficient basis for

decision, the district court may require the government to submit more detailed public

affidavits before resorting to in camera review of the documents themselves and/or in

camera affidavits.").

Accordingly, Gerstein's motion for in camera review will be denied without prejudice.

**IV.  Request for Discovery**

Gerstein seeks discovery with respect to government-authorized public statements,

as well as official declassifications or partial declassifications of documents, related to

documents withheld under either Exemption 1 or Exemption 3.

In the context of FOIA actions, provided certain criteria are met, summary judgment

is appropriate without further discovery.  Specifically, summary judgment is appropriate

where the agency's search was reasonable, the Vaughn index presented is adequate, and

the agency has "satisfied its burden of establishing that the requested documents [are]

exempt from disclosure."  See Citizens Comm'n on Human Rights, 45 F.3d at 1329

(affirming grant of summary judgment in favor of agency where district court did not permit

requested discovery; noting "[i]f the affidavits contain reasonably detailed descriptions of

the documents and allege facts sufficient to establish an exemption, the district court need

look no further").

Consequently, to the extent summary judgment will be granted as to documents

withheld under Exemptions 1, 3, and 5, discovery is not warranted.  With respect to

documents for which the agency did not make a sufficiently detailed showing, the Court, as

noted, will permit the agency to provide a more detailed declaration.  Under such

circumstances, it would be premature for the Court to grant discovery at this stage of the

1  proceedings.

2       Accordingly, Gerstein's motion for limited discovery will be denied without prejudice.

3                                    **CONCLUSION**

4       For the reasons set forth above,

5       1.  Defendants' Motion for Partial Summary Judgment is hereby GRANTED in part

6  and DENIED in part as follows:

7            a.  With respect to the adequacy of the search conducted by each defendant,

8  the motion is granted.

9            b.  With respect to the NRO's withholding of a document under Exemption 1,

10  the motion is granted.

11            c.  With respect to the NSA's withholding of documents under Exemption 3,

12  the motion is granted.

13            d.  With respect to the CIA's withholding of seventeen documents located in

14  its own records under Exemption 3, the motion is granted; with respect to the CIA's

15  withholding of fourteen documents referred by the DOJ, the motion is denied.  Such denial

16  is without prejudice to the CIA's filing, no later than November 21, 2008, a renewed motion

17  for summary judgment in which the CIA supports the withholding of such documents with a

18  more detailed declaration.

19            e.  With respect to the OIP's withholding of documents under Exemption 5,

20  the motion is granted.

21            f.  With respect to the CRM's withholding of documents under Exemptions 3,

22  5, and 6, the motion is granted.

23            g.  With respect to the OPR's withholding of documents, the motion is denied.

24  Such denial is without prejudice to the OPR's filing, no later than November 21, 2008, a

25  renewed motion for summary judgment in which the OPR supports the withholding of such

26  documents with a more detailed declaration.

27            h. With respect to the DOS, summary judgment is granted.

28       2.  Gerstein's Motion for More Definite Statement from Defendant NSA is hereby

33

1    DENIED.

2         3.  Gerstein's Cross-Motion for Partial Summary Judgment is hereby DENIED.

3         4.  Gerstein's Motion for In Camera Review and Limited Discovery is hereby

4    DENIED without prejudice.

5         **IT IS SO ORDERED.**

6

7    Dated: September 26, 2008

8                                                        MAXINE M. CHESNEY
                                                         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28